IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-41269

BOBBY WATSON, On Behalf of Himself
and All Others Similarly Situated,

Plaintiff-Appellant,

versus

STATE OF TEXAS,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

August 7, 2001

Before HIGGINBOTHAM and BENAVIDES, Circuit Judges, and LITTLE,[*]
District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Texas smokers, suffering smoking-related illnesses treated
with Medicaid assistance, filed this suit asserting a right to
share in the settlement that resolved the lawsuit filed by the
State of Texas against members of the tobacco industry. The
district court dismissed the smokers' complaint in the suit now
before us for failure to state a claim upon which relief can be
granted. It accepted the state's contention that Texas sought and
is to be paid only for its own damages; that Texas did not sue as

[*] District Judge of the Western District of Louisiana, sitting
by designation.

an assignee of Medicaid recipients.  The district court rejected the state's plea that the Eleventh Amendment deprived the district court of jurisdiction.  We agree with the district court and AFFIRM.

I

The facts are simple.  The State of Texas and numerous other states sued various tobacco companies.  In 1998, these states and defendants from the tobacco industry reached an agreement termed a Comprehensive Settlement Agreement.  Pursuant to the Agreement the tobacco companies agreed to pay Texas an amount in excess of $17,000,000,000.00, payable to the state over an extended period.

Bobby Watson seeks a share of the settlement for himself and the class he represents.  Watson and his class members are smokers who have been treated for smoking-related illnesses and whose medical expenses were covered in part under the Texas Medicaid program.

The class argued before the district court that it was entitled to a share of the settlement proceeds pursuant to 42 U.S.C. § 1396k.  That statutory provision, entitled "Assignment, enforcement, and collection of rights of payments for medical care; establishment of procedures pursuant to State plan; amounts retained by State," provides in pertinent part that:

(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to

recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall–

(1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required–

(A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.

* * *

(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with

appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.[1]

According to plaintiffs, they comprise the class of "such individual[s]" to whom "the remainder of such amount collected shall be paid."

The district court was not convinced. It first held that it had jurisdiction under the Settlement Agreement, and that Texas's limited waiver of Eleventh Amendment immunity included this dispute. It then held that Texas's claims against the tobacco industry were made directly and not as an assignee of Medicaid recipients. It concluded that section 1396k therefore did not apply, and dismissed the case under Rule 12(b)(6) as failing to state a claim upon which relief can be granted.

Watson appeals, asking that we reverse the 12(b)(6) dismissal. The State of Texas urges that we affirm, preferably on Eleventh Amendment immunity grounds. We are persuaded that the waiver of Eleventh Amendment immunity contained in the Comprehensive Settlement Agreement reached this suit, narrow though the waiver is. We are also persuaded that Texas proceeded directly and not as

---

[1] 42 U.S.C. § 1396k (2001).

4

an assignee, and we therefore AFFIRM the judgment of the district court.

## II

In reviewing a dismissal under Rule 12(b)(6), we accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff, asking whether it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[2] We first examine the State of Texas's Eleventh Amendment immunity defense.

We begin with the black letter, or to borrow a student phrase, the "red eye law." "[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States."[3] Texas's Eleventh Amendment immunity[4] will bar this suit unless it has been validly abrogated or waived. No party here argues

---

[2] *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[3] *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).

[4] We will refer to a state's immunity from suit in federal court as Eleventh Amendment immunity, for convenience to distinguish it from a state's sovereign immunity from suit in its own courts. *Cf. Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (distinguishing for waiver purposes between a state's sovereign immunity from suit in state courts and a state's immunity from suit in federal courts). We recognize that the text of the Eleventh Amendment refers only to suits against states by citizens of other states. The immunity invoked in this case, by a citizen of Texas against Texas, thus comes not from the text of the Eleventh Amendment, but rather from the constitutional presupposition of sovereign immunity the Supreme Court has recognized. *See Kimel*, 528 U.S. at 72-73.

5

abrogation, so the question is whether Texas's waiver of immunity included this dispute.[5]  We find that it did.

While Eleventh Amendment immunity "partakes of the nature of a jurisdictional bar,"[6] unlike any other issue of federal subject matter jurisdiction, it can be waived by the state.[7]  A state's waiver must be unequivocal, but it can be either express or implied.[8]  Where waiver is by express statement, the intent to waive immunity from suit in federal court must be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."[9]  We will find waiver by implication from conduct

---

[5] Watson urges a third theory: that the court possesses ancillary jurisdiction over this case.  It is true that supplemental jurisdiction (the rubric under which ancillary jurisdiction is now contained) would permit a court to exercise jurisdiction over a case even where the court would not otherwise have jurisdiction to hear the case.  *See Manges v. McCamish, Martin, Brown & Loeffler*, 37 F.3d 221, 224 (5th Cir. 1994).  It is also true that Eleventh Amendment immunity is jurisdictional in character.  *See Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974).  However, the presence of supplemental jurisdiction does not eliminate an Eleventh Amendment bar.  *See County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985).  The mere presence of a jurisdictional basis cannot defeat the Eleventh Amendment, lest the Amendment become a nullity.

[6] *Edelman*, 415 U.S. at 677-78.

[7] *See Clark v. Barnard*, 108 U.S. 436, 447 (1883) ("The immunity from suit belonging to a state . . . is a personal privilege which it may waive at pleasure."); *Atascadero*, 473 U.S. at 238.

[8] *See Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000).

[9] *Edelman*, 415 U.S. at 673 (internal quotation marks omitted).

only under narrow circumstances: we require that the state employ the power of the federal court in such a way that its intent to forego its acceptance of immunity be unequivocal.[10]

The Comprehensive Settlement Agreement was signed by the attorney general of Texas, on behalf of the State of Texas.[11] Two clauses of the Agreement in combination unequivocally waive Texas's Eleventh Amendment immunity for a limited class of disputes. They acknowledge the parties' acceptance of federal jurisdiction and the retention by the court of jurisdiction to enforce the settlement and recite their agreement to present all disputes over the settlement agreement to the court.

> [The parties] acknowledge that this Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and that this court shall retain jurisdiction for the purposes of implementing and enforcing this Settlement Agreement.

---

[10] *See Neinast*, 217 F.3d at 279.

[11] We presume that the attorney general for the State of Texas had the power to sign the Agreement on behalf of Texas and had the power to waive the state's sovereign immunity. *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 467 (1945) ("It is conceded . . . that if it is within the power of the administrative and executive officers of Indiana to waive the state's immunity, they have done so in this proceeding. The issue thus becomes one of their power under state law to do so.").

7

The second clause is the disputes clause, which states that the parties:

> agree to present any disputes under this Settlement Agreement, including without limitation any claims for breach or enforcement of this Settlement Agreement, exclusively to this Court.

It is undisputed that these two clauses waive immunity for the class of cases they cover.

The phrase "this Court" refers to the United States District Court for the Eastern District of Texas, Texarkana Division, the court suit was brought in and from which this appeal was taken. The court referred to in the Agreement is a federal court.[12]

The enforcement clause acknowledged that the federal court had subject matter[13] and personal jurisdiction over the State of Texas.

---

[12] *Compare Kennecott Copper Corp. v. State Tax Comm'n.*, 327 U.S. 573, 579-80 (1946) (finding insufficiently clear a statute permitting suit in "any court of competent jurisdiction"), *with Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 74-76 (2000) (finding sufficiently clear a statute authorizing suit in "any Federal or State court of competent jurisdiction").

[13] The provision purporting to vest a federal court with subject matter jurisdiction cannot, of course, create federal subject matter jurisdiction where it otherwise would not exist. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850-51 (1986). We need not concern ourselves with that issue here, however. Plaintiffs have sued under a federal statute, 42 U.S.C. § 1396k, thereby raising a federal question.

While vesting of jurisdiction alone is not sufficient to overcome the Eleventh Amendment,[14] the state consented to the vesting of jurisdiction "for the purposes of implementing and enforcing" the Agreement.  Ordinary usage suggests that "enforcing" the Agreement might entail one party suing the other, which would be impossible unless Texas's consent to jurisdiction embodied a waiver of its Eleventh Amendment immunity.

By the disputes clause, the parties (including Texas) agreed to present to the court below "any disputes" under the agreement. "Any disputes" encompasses not only disputes initiated by Texas, but also disputes initiated by the tobacco industry.  The clause goes on to say "including *without limitation any* claims for breach or enforcement."  This phrase encompasses all claims, including claims brought by tobacco companies against the sovereign State of Texas.  By its plain language, then, the disputes clause expresses Texas's consent that covered claims are to be presented exclusively to the United States District Court for the Eastern District of Texas.  That is an express and unequivocal waiver of Texas's Eleventh Amendment immunity.

Watson contends that the State of Texas of necessity sued the tobacco companies under an assignment of rights from himself and the class he represents.  Texas, according to Watson, stood in the

---

[14] *See County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985).

class's shoes when it signed the Agreement, and thus Watson and the class are not strangers to the Agreement. Rather, Watson and the class, while not named parties, were real parties in interest in the underlying tobacco litigation. This highlights the fact that the claim here is to the proceeds of a settlement fund assertedly created by settlement of a claimed breach of duty owed both to Texas and the Watson class.

This is not a case where the plaintiff seeks to recover money from the state for breach of some duty owed only by the state, and tries to bootstrap his way into an Eleventh Amendment waiver by demanding the proceeds of the Settlement Agreement. Here, the basis for Watson's claim is inextricable from the issues raised by the case that the Settlement Agreement settled. Watson bases his claim on the theory that he was an implied party to the underlying tobacco litigation. That claim goes directly to the judgment of the district court in the underlying tobacco litigation, and to the assumptions upon which the Settlement Agreement was based. If Watson submits that issue to a state court, and returns with a state court judgment ordering that he be paid proceeds from the Settlement Agreement as an assignor of the state, the Agreement's goal of resolving all disputes over the Agreement in one court will be frustrated. The gathering of disputes is reinforced by the district court's retention of control over the disbursement of the settlement proceeds. Paragraph 11 of the Agreement provides that all payments under the Agreement will be made into the court's

10

registry, and shall be disbursed "only in accordance with the orders of the Court."  Watson and his class are urging the court to order that a portion of the proceeds be disbursed to the class, a request assertedly under the Settlement Agreement.  And another court will be ordering disbursement from the settlement proceeds.

We conclude that this suit is within the waiver in the Settlement Agreement.  In so concluding, we agree with the state that its waiver was not general.  Rather, it was a narrow and carefully crafted instrument intended to relinquish no more of the state's sovereign immunity than it must to effectuate the settlement in a sound and efficient manner.  In short, we today treat only the claims of Watson and his class with their uniquely snug fit with the case that was settled.

## III

Watson seeks to recover proceeds of the Settlement Agreement under 42 U.S.C. § 1396k(b).  Section 1396k requires states who wish to participate in Medicaid to require individual beneficiaries to assign to the state any rights to support and payment of medical care by any third party.[15]  It then creates a distribution scheme by which any money governed by section 1396k(b) is used first to reimburse the Federal Government, then to reimburse the state, with any surplus paid over to the beneficiary:

---

[15] 42 U.S.C. § 1396k(a)(1)(A).

11

Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.[16]

The Federal Government has waived any claim it may have to reimbursements.[17]  Hence, the claim of the class is that under section 1396k(b) the settlement proceeds are to be paid first to Texas, up to the amount spent by Texas, with any surplus paid to the class.  Our task is to decide whether section 1396k(b) applies.

Watson's assertion is empty beside the plain text of section 1396k(b).  The text reaches only recoveries made under an assignment of rights.  The statute begins with "[s]uch part of any amount collected by the State *under an assignment* made under the provisions of this section shall be . . . ."[18]

---

[16] 42 U.S.C. § 1396k(b).

[17] *See* 42 U.S.C. § 1396b(d)(D)(3)(B)(i).

[18] 42 U.S.C. § 1396k(b) (emphasis added).

Whether section 1396k(b) applies turns on whether the State of Texas proceeded directly or under an assignment. In the underlying tobacco litigation, the district court held that the state proceeded directly.[19] The tobacco industry urged an assumption of the risk defense available against the State only if it were proceeding as an assignee. The contention was in part that § 32.033 of the Texas Human Resources Code was Texas's exclusive remedy; that the State was only authorized to proceed as an assignee and was not authorized to proceed directly.[20] The district court rejected this argument, holding that the State was authorized by law to proceed directly and had a quasi-sovereign interest warranting a direct action.[21] In short, the district court held that Texas asserted its own claim and did not assert the claims of assignees; that it was not required to do so.

Having reviewed the complaint independently, we agree with the district court that the State of Texas proceeded directly. The first place to look when attempting to characterize the underlying lawsuit is, of course, the complaint itself.[22] If this action were

---

[19] *See State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 961-65 (E.D. Tex. 1997) (holding that the subrogation provisions of Texas law do not provide the state's exclusive remedy, but rather that the state can and did proceed directly under a common law theory).

[20] Tex. Human Resources Code § 32.033 (2001).

[21] *See Am. Tobacco Co.*, 14 F. Supp. 2d at 961-65.

[22] *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987) (holding that the plaintiff is the master of the complaint

brought under an assignment of rights, the complaint would have to plead the state's right to file suit for an injury to citizen smokers. Texas's Fourth Amended Complaint in the underlying action does not do so. It nowhere alleges that the state holds an assignment of rights from smokers, nor does it plead that such assignment entitles it to enforce the rights of smokers.

Texas's complaint in the tobacco litigation makes clear that as regards the Medicaid reimbursement theories of recovery, the state is not suing for the full amount of injury the tobacco companies may have inflicted upon smokers, but rather only for the money spent by the state. The complaint states that the action is "to recover funds *expended by the State* to provide medical treatment to citizens suffering from smoking-related illnesses."[23] It also says "For decades, *the State* has incurred significant expenses associated with the provision of necessary health care . . . ."[24]

---

for purposes of determining federal question jurisdiction, and may choose not to assert federal causes of action that he or she would by law be entitled to assert).

[23] The italics in this and subsequent quotations from the complaint are ours.

[24] Plaintiff places great emphasis on the fact that the complaint expressly seeks reimbursement of Medicaid expenses. That misses the point. Mere invocation of the Medicaid statute does not require the state to split a recovery under 1396k(b), rather as we have explained, the lawsuit must be under an assignment for 1396k(b) to apply.

The payments provided for in the Agreement are not broken down by claim. Thus, it would be difficult, if possible at all, to calculate the percentage of the state's recovery based on Medicaid expenses and the percentage, for example, based on RICO punitive damages.[25] The Medicaid portion of the payment stream might only be the amount the state itself spent on Medicaid.[26] If so, then there would be no surplus Medicaid recovery to be distributed under section 1396k(b) – all excess funds in the payment stream might properly be attributed to the state's myriad other theories of recovery.[27] The relevant point is that absence of earmarking is inconsistent with the assertion that the parties to the Settlement

---

[25] *Cf. Floyd v. Thompson*, 227 F.3d 1029, 1038 (7th Cir. 2000) ("We add that the administrative problems that would be created by any other ruling would be nightmarish. As Wisconsin and the other states point out, the total sums of money to be paid under the M.S.A. are not earmarked for different claims. . . . The final amount to be paid, after 25 years have elapsed, is unknown and unknowable at this point, because it depends partly on how successful the anti-smoking campaigns turn out to be.").

[26] The complaint would support this reading. Texas's Fourth Amended Complaint in the underlying action makes abundantly clear that the action is "to recover funds *expended by the State* to provide medical treatment to citizens suffering from smoking-related illnesses." We do not insist that this is necessarily the correct view of the agreement; rather we mention this interpretation to demonstrate the difficulties associated with trying to apply section 1396k(b) to this case.

[27] For example, the state asserted a RICO claim, a federal antitrust claim, a state law antitrust claim, a common law nuisance claim, a common law unjust enrichment claim, and a product liability claim. If the Medicaid recovery was only the amount actually spent by Texas, Watson would have no claim to any portion. *Cf. Floyd*, 227 F.3d at 1037.

Agreement understood the settlement to be for the benefit of the state and not others.

Nothing in Section 32.033 of the Texas Human Resources Code is intolerant of the state pursuing only its own claim. After requiring the assignment of rights mandated by federal law, the code provides that "[a] separate and distinct cause of action in favor of the state is hereby created, and the department may, without written consent, take *direct* civil action . . . ."[28]

Where the relevant statute authorizes a direct action, the complaint makes no mention of an assignment of rights but does repeatedly assert a direct injury to the state, and the case was allowed to proceed on the understanding that it was a direct action, we have no difficulty in concluding that the distribution scheme in section 1396k(b) does not apply. If the distribution scheme upon which plaintiff rests his case is inapplicable, then Watson can prove no set of facts in support of his claim which will entitle him to relief. Dismissal under Rule 12(b)(6) was therefore appropriate.[29]

## IV

The judgment of the district court is AFFIRMED.

---

[28] Tex. Human Resources Code § 32.033(d).

[29] *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).