**F I L E D**
United States Court of Appeals
Tenth Circuit

**SEP 10 2001**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILFRED L. HARRIS, Individually
and as Proposed Class Representative
on Behalf of All Others Similarly
Situated,

     Plaintiff - Appellant,

v.

BILL OWENS, in his official capacity
as Governor of the State of Colorado;
JIM RIZZUTO, in his official capacity
as Executive Director of the Colorado
Department of Health Care Policy and
Financing,

     Defendants - Appellees,

_____

STATE OF NEW MEXICO; STATE
OF CALIFORNIA; STATE OF
GEORGIA; STATE OF HAWAII;
STATE OF KANSAS; STATE OF
MARYLAND; STATE OF
MONTANA; STATE OF NEVADA;
STATE OF NORTH CAROLINA;
STATE OF TENNESSEE; STATE OF
UTAH; STATE OF WEST VIRGINIA,

     Amici Curiae.

No. 00-1292

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-S-953)**

William E. Zimsky of Abadie & Zimsky, Durango, Colorado, for Plaintiff-Appellant.

Andrew Patrick McCallin, Assistant Attorney General (Ken Salazar, Attorney General and Jan Michael Zavislan, Assistant Attorney General, with him on the brief), Denver, Colorado, for Defendants-Appellees.

Patricia A. Madrid, Attorney General, Santa Fe, New Mexico; John H. Clough, Assistant Attorney General, Albuquerque, New Mexico, filed a brief for Amici Curiae.

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **OWEN**,[*] District Judge.

**EBEL**, Circuit Judge.

In recent years society has begun to recognize smoking as an important public-health issue. The historic 1998 agreement between most of the states and the major tobacco companies was a milestone in the ongoing attempt to address this issue. As part of a broad settlement of the states' claims, the tobacco companies agreed to pay over time hundreds of billions of dollars to the states. In view of the enormous amount of money at stake, it is perhaps not surprising that there has been considerable controversy about the status of the settlement funds.

[*] The Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

In this case, a recipient of Medicaid benefits for smoking-related illnesses seeks a share of the settlement funds. He argues that when he applied for Medicaid benefits from Colorado, he assigned to the state his right to sue the tobacco companies for the injuries he has suffered from their products. He asserts that the state's comprehensive settlement covered his individual claims, and that under federal Medicaid law, after the state has reimbursed itself for the benefits it has paid out it must then turn over the excess funds attributed to the Medicaid settlement to the individuals whose claims were settled.

Contrary to a number of district courts that have considered similar cases, we hold that this suit is not barred by the Eleventh Amendment. It seeks prospective relief for an alleged ongoing violation of federal law, and the requested relief does not implicate special sovereignty interests. On the merits, however, we find the suit foreclosed by a recent federal law amending the Medicaid statute. We hold that this law, passed in response to similar controversy over the federal government's right to control part of the tobacco settlement funds, releases the state from having to reimburse individual Medicaid recipients. We therefore affirm the district court's dismissal of the complaint in this case.

# BACKGROUND

Medicaid is a cooperative federal-state program that provides medical services to those without resources to pay for them. See generally 42 U.S.C. §§ 1396-1396u. The federal government provides funding to a state's Medicaid program if it meets various statutory and regulatory requirements. At issue in this case is the requirement that the state condition eligibility for Medicaid benefits on recipients' assigning to the state any claims they have "to support . . . and to payment for medical care from any third party." § 1396k(a)(1)(A). The state's program must also provide that when a third party is found to be legally liable for the costs of a recipient's medical care, the state will seek reimbursement "to the extent of such legal liability," so long as the amount the state can reasonably expect to recover exceeds the costs of recovery. § 1396a(25)(B). Part of any money the state collects under this assignment

> shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.

§ 1396k(b) (emphasis added). Colorado administers a Medicaid program and requires that an applicant assign to the state "all rights the applicant may have to medical support or payments for medical expenses from any other person." Colo. Rev. Stat. § 26-4-106(4).

In 1997, Colorado sued several major tobacco companies in Colorado state court for a number of violations of state law related to the manufacturing and marketing of tobacco products such as cigarettes, including false representations, restraint of trade, and racketeering. Although the complaint did not set forth a separate cause of action under Medicaid law, it requested (among other relief) damages (including treble damages) "in the amount of increased health care costs paid by the State," including "increased Medicaid payments."

In 1998, Colorado and most other states settled their lawsuits with the tobacco companies in what is called the "Master Settlement Agreement." It released the companies from past, present, and future claims by Colorado, including all health-related claims. The settlement required the tobacco companies to comply with various conditions, such as limitations on advertising. It also required the companies to make regular payments into an escrow fund, the amounts of which are subject to adjustment as market conditions change. Once the settlement agreement was finalized through a consent decree, Colorado became entitled to a share (about 1.37%) of these funds. The complaint estimates Colorado's share over the next 25 years at about $2.6 billion.

Wilfred Harris is a recipient of Colorado's Medicaid program who has been treated for smoking-related illnesses.[1]  He filed this action under 42 U.S.C. § 1983, alleging that (1) he assigned his right to sue the tobacco companies to Colorado; (2) Colorado settled his individual claims against the tobacco companies in its broad release in the Master Settlement Agreement; (3) part of the settlement funds therefore are subject to the distribution requirements of § 1396k(b); and consequently (4) he is entitled to some portion of the funds once the state reimburses itself for its Medicaid expenses.[2]  The complaint asked for declaratory and injunctive relief against Governor Bill Owens and Jim Rizzuto, Executive Director of the Colorado Department of Health Care Policy and Financing.  In particular, Harris sought to enjoin Defendants from depositing the

---

[1]Harris filed this lawsuit as a class action on behalf of all those who have had treatments for smoking-related illnesses paid for by Colorado's Medicaid program "whose claims [for medical expenses] were released by the State of Colorado in the Master Settlement Agreement."  Because the district court did not rule on class certification, we refer to the plaintiff as "Harris."

[2]Harris conceded that the settlement "does not specify what portion of the payments to the State of Colorado will be attributable to tobacco related Medicaid costs," and the Seventh Circuit has noted the "nightmarish" administrative problems involved in sorting out the Medicaid share.  Floyd v. Thompson, 227 F.3d 1029, 1038 (7th Cir. 2000).  Harris's complaint seeks payment for (1) all smoking-related medical expenses not covered by Medicaid; (2) the difference between the reasonable value of medical treatments he had received and the amount paid by Medicaid; and (3) the value of future needed medical treatments.  This formula seems to assume that the state settled his claims at their full value.

settlement funds into the state treasury until entitlement to the funds was resolved.

Defendants moved to dismiss for lack of subject-matter jurisdiction due to Eleventh Amendment sovereign immunity and failure to state a claim upon which relief can be granted.  A magistrate judge recommended dismissing on both grounds.  Over Harris's objection, the district court dismissed the case on both grounds.

Similar cases have been filed in at least twenty-five other states.  Twelve of these states have joined an amicus brief filed in this case.  Virtually every court, state or federal, that has considered one of these cases has dismissed it either because of sovereign immunity or because the Master Settlement Agreement was not a Medicaid settlement subject to § 1396k(b).  E.g., Watson v. Texas, — F.3d —, 2001 WL 883533 (5th Cir. 2001) (merits); Floyd v. Thompson, 227 F.3d 1029 (7th Cir. 2000) (merits); Cardenas v. Anzai, 128 F. Supp. 2d 704 (D. Haw. 2001) (Eleventh Amendment); Strawser v. Lawton, 126 F. Supp. 2d 994 (S.D. W. Va. 2001) (merits); Skillings v. Illinois, 121 F. Supp. 2d 1235 (C.D. Ill. 2000) (merits); Martin v. New Mexico, 197 F.R.D. 694 (D.N.M. 2000) (Eleventh Amendment); Barton v. Summers, 111 F. Supp. 2d 989 (M.D. Tenn. 2000) (Eleventh Amendment); State v. Superior Court, 99 Cal. Rptr. 2d 735 (Ct. App. 2000) (merits).  The sole exception of which we are aware is Lewis v. State, No.

LACV-037031 (Iowa Dist. Ct. July 21, 2000), an unreported decision denying Iowa's motion to dismiss with little discussion.

**DISCUSSION**

A. Jurisdiction and Standard of Review

Putting aside for a moment the Eleventh Amendment issue discussed below, the district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's decision to dismiss this case on Eleventh Amendment grounds and for failure to state a claim. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (failure to state a claim); ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1186 (10th Cir. 1998) (Eleventh Amendment). On a motion to dismiss for failure to state a claim, we accept all well-pleaded allegations as true and view them in the light most favorable to the non-moving party. Sutton, 173 F.3d at 1236.

B. Order of Issues

We first address the threshold question whether we must decide the Eleventh Amendment issue before we reach the merits of this case. In similar cases in other states, two federal courts have bypassed the Eleventh Amendment and dismissed on the merits. See Floyd v. Thompson, 227 F.3d 1029, 1034-35

(7th Cir. 2000); Strawser v. Lawton, 126 F. Supp. 2d 994, 999-1000 (S.D. W. Va. 2001). Although we agree with the Seventh Circuit that the merits of this case are more easily resolved than is the Eleventh Amendment issue, see Floyd, 227 F.3d at 1034-35, we are compelled by our precedent to decide the Eleventh Amendment issue first. See Martin v. Kansas, 190 F.3d 1120, 1126 (10th Cir. 1999) ("Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of Martin's underlying ADA claim."), overruled on other grounds by Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). Once effectively raised, the Eleventh Amendment becomes a limitation on our subject-matter jurisdiction, and we may not then assume "hypothetical jurisdiction" to reject a plaintiff's claim on the merits. Id.; cf. Fent v. Okla. Water Res. Bd., 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that a proper Eleventh Amendment challenge strips the courts of jurisdiction for the purposes of the removal statute, 28 U.S.C. § 1447(c)).

Some statutory questions are both logically antecedent to and similar in scope to the Eleventh Amendment inquiry. In those circumstances, it is appropriate for us to address the statutory question first. For example, the Supreme Court has held that we can address whether a statute permits a suit against the state before deciding the Eleventh Amendment question. Vt. Agency

of Natural Res. v. United States, 529 U.S. 765, 779-80 (2000).  Defendants do not dispute that they can be sued under 42 U.S.C. § 1983.[3]

Unlike the question whether a statute authorizes a suit against a state, the question whether the suit states a claim upon which relief can be granted is neither logically antecedent to nor coincident in scope with the Eleventh Amendment inquiry.  Cf. Vt. Agency, 529 U.S. at 779 (distinguishing between whether the statute authorizes a suit against the state and the broader questions whether it authorizes a private cause of action at all or whether the complaint states a claim).  Though it is generally our practice to avoid difficult

---

[3]For the purposes of this case, we assume that § 1983 provides a cause of action for violations of the Medicaid provisions at issue here.  Amici argue briefly to the contrary.  Both the Supreme Court and this court, however, have found that § 1983 creates a private cause of action to enforce other provisions of the federal Medicaid laws.  E.g., Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 512 (1990) (discussing § 1396a(a)(13)(A)); Amisub (PSL) v. Colo. Dep't of Soc. Servs., 879 F.2d 789, 793 (10th Cir. 1989) (same); cf. Colo. Health Care Ass'n v. Colo. Dep't of Soc. Servs., 842 F.2d 1158, 1164 n.5 (10th Cir. 1988) (citing federal appellate cases permitting private causes of action under the Medicaid laws).  But cf. Suter v. Artist M., 503 U.S. 347, 359 (1992) (suggesting in a non-Medicaid case that Wilder might be limited to the particular provision at issue in that case).  In any event, absent "exceptional circumstances," we do not ordinarily consider issues raised only in an amicus brief.  Wyo. Farm Bureau Fed'n v. Babbitt, 199 F.3d 1224, 1230 n.2 (10th Cir. 2000).  Although we generally do not accept a party's legal concession on a jurisdiction issue, the statutory issue is not itself jurisdictional.  Moreover, because Eleventh Amendment immunity is subject to waiver by Defendants, we would not be precluded from accepting their concession in any event.  Cf. United States ex rel. Long v. SCS Bus. & Technical Inst., 173 F.3d 890, 892-93 (D.C. Cir. 1999) (suggesting that a court may accept a state's invitation to decide the merits first).

constitutional questions when a case can be resolved on simpler statutory grounds, we decline to follow the Seventh Circuit's Floyd v. Thompson.

In Strawser, the district court partly circumvented the Eleventh Amendment analysis in a somewhat different manner. The court concluded that because the plaintiffs' claim failed on the merits, there was no ongoing violation of federal law, and so the Ex parte Young exception to sovereign immunity was inapplicable. Id. at 1000. We have held, however, that at this stage, the question is not whether the state officials "actually violated federal law"; rather, it is whether the plaintiffs have stated a "non-frivolous, substantial claim for relief" under federal law. Elephant Butte Irrigation Dist. v. Dep't of Interior, 160 F.3d 602, 610 (10th Cir. 1998). This is congruent with our practice under 28 U.S.C. § 1331, the statute conferring federal-question jurisdiction: If the federal claim is not wholly frivolous, it suffices to establish federal jurisdiction even if it ultimately is rejected on the merits. Martinez v. United States Olympic Comm., 802 F.2d 1275, 1280-81 (10th Cir. 1986). Harris has alleged a violation of 42 U.S.C. § 1396k(b), which states that the state "shall" reimburse itself and the federal government for Medicaid expenses and pay the remainder to the Medicaid recipient. While we ultimately reject Harris's claim on the merits, it should not be characterized as frivolous. Cf. Brown v. State, 617 N.W.2d 421, 427-28 (Minn. App. 2000) (upholding the dismissal of a similar lawsuit but reversing the

district court's award of sanctions against the plaintiffs' attorneys), <u>cert. denied</u>, <u>Brown v. Minnesota</u>, 121 S.Ct. 1655 (2001). Indeed, the Congressional Record reports that three states (Florida, Louisiana, and Massachusetts) treated their settlement with the Liggett Corporation, a tobacco company, as Medicaid settlements and reimbursed the federal government for its share of costs. 145 Cong. Rec. S2831 (daily ed. Mar. 17, 1999) (statement of Sen. Specter). If this settlement was treated as including Medicaid settlements under § 1396k(b), it is not unreasonable for Harris to argue that the Master Settlement Agreement is also subject to § 1396k(b). We therefore decline to follow <u>Strawser</u>.

C. <u>Sovereign Immunity</u>

The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Because the Amendment "stands not so much for what it says, but for the presupposition which it confirms," it has been interpreted much more broadly than its text would suggest. <u>ANR Pipeline</u>, 150 F.3d at 1187 (quotation marks and alterations omitted). Among other things, it generally bars suits brought by individuals against state officials acting in their official capacities. <u>Elephant Butte</u>, 160 F.3d at 607. This bar does not apply,

- 12 -

however, if the state waives its sovereign immunity, if Congress validly abrogates the state's immunity, or if the suit falls within the legal fiction of Ex parte Young, 209 U.S. 123 (1908). ANR Pipeline, 150 F.3d at 1187-88. Harris argues only that this case falls within the Ex parte Young doctrine. A suit within the Ex parte Young doctrine is not considered a suit against the state; rather, it is a suit against individual state officers who are stripped of their official character. Elephant Butte, 160 F.3d at 607-08.

For the purposes of this case, the relevant features of the Ex parte Young doctrine can be summarized as follows: The Eleventh Amendment does not bar a suit against state officials in their official capacities if it seeks prospective relief for the officials' ongoing violation of federal law. See generally Elephant Butte, 160 F.3d at 607-09; ANR Pipeline, 150 F.3d at 1188-89. Even if these requirements are met, the suit will be barred either if the relief requested "implicates special sovereignty interests" and is the "functional equivalent" of relief that would otherwise be barred; or in cases involving only statutory rights, if Congress has prescribed a "detailed remedial scheme" for enforcing the right against a state. ANR Pipeline, 150 F.3d at 1189-90. Defendants do not contend that Congress has created a detailed remedial scheme to supplant Ex parte Young in this case, so we consider only whether this suit seeks prospective relief for an

- 13 -

ongoing violation of federal law and whether the requested relief implicates special sovereignty interests and would otherwise be barred.

1. Defendants' Authority

Defendants argue that they lack authority under Colorado law to pay any portion of the settlement funds to Harris. In particular, citing Sections 32 and 33 of Article V of the Colorado Constitution, they argue that state funds can be disbursed from the treasury only through an appropriations bill passed by the state legislature. If they lack authority to provide the relief Harris seeks, they argue, they are not acting in violation of federal law and cannot be enjoined under Ex parte Young.

This contention is irrelevant in this case. Defendants misconstrue the nature of the relief Harris seeks. Harris seeks a declaratory judgment that once the state reimburses itself for its Medicaid expenses, he is entitled to a portion of the tobacco settlement funds that are to be paid to the state, and an injunction preventing the state from depositing these funds into the state treasury until the court determines what amount is due to the smokers. The money Harris seeks has not yet been paid into the state treasury. Since "the state cannot 'authorize' the officials to violate federal law," Elephant Butte, 160 F.3d at 610, if some of the

money truly belongs to Harris under federal law, the officials may not turn it over to the state treasury.

In addition, we are satisfied that the named officials have the authority to comply with federal law here. Defendant Owens wields the "supreme executive power of the state" and is charged with "tak[ing] care that the laws be faithfully executed." Colo. Const. art. IV, § 2. Defendant Rizzuto is charged with administering Colorado's Medicaid law, the Colorado Medical Assistance Act. See Colo. Rev. Stat. § 25.5-1-201(1)(c). As such, he appears to be empowered to take actions necessary to comply with federal Medicaid requirements. See Colo. Rev. Stat. § 26-4-105. Defendants can be enjoined to prevent the state from appropriating funds that belong to Harris or other Medicaid recipients.

2. Prospective Relief

As noted above, Harris seeks declaratory and injunctive relief. This suit is not prospective merely because the requested relief is framed in equitable terms rather than as a request for damages. See ANR Pipeline, 150 F.3d at 1189 (citing Edelman v. Jordan, 415 U.S. 651, 668 (1974)). Nor is it dispositive that the requested relief is likely to burden the state's treasury to some degree. Elephant Butte, 160 F.3d at 611. "The overriding question is not whether the relief will require the payment of state funds, but whether the relief will remedy future

rather than past wrongs." Id. (quotation marks omitted); cf. Nelson v. Miller, 170 F.3d 641, 646 (6th Cir. 1999) ("Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief."). Although the Eleventh Amendment bars compensatory relief for past injuries, "relief that serves directly to bring about an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." Papasan v. Allain, 478 U.S. 265, 278 (1986).

Applying these principles, we conclude that at least part of Harris's suit is not barred by the Eleventh Amendment.[4] Most of the tobacco settlement funds due to Colorado have not yet been paid. Harris asserts that some of these funds belong to him under 42 U.S.C. § 1396k(b) and seeks to prevent the state from depositing his portion into the state treasury. The alleged violation of federal law

_____

[4]It is arguable that Harris may not recover tobacco funds that have already been deposited in the state treasury and appropriated for other uses. It is unclear from the record how much money (if any) the state has actually received to date. With respect to these funds, the alleged violation may be the wrongful appropriation of money that belonged to Harris. This action would be wholly in the past, and ordering Defendants to pay Harris for that past conduct would likely be considered "the practical equivalent of money damages." ANR Pipeline, 150 F.3d at 1189; cf. Johns v. Stewart, 57 F.3d 1544, 1554-55 (10th Cir. 1995) (holding that a suit seeking to recover withheld social-security benefits was barred as to past withholdings but could proceed as to future withholdings). We need not resolve this issue definitively, however; it is clear that most of Harris's suit is not barred by the Eleventh Amendment, and we ultimately reject it on the merits.

- 16 -

here is the appropriation that has yet to take place. Thus, with respect to these funds, Harris is seeking prospective relief from an ongoing violation. As such, his claim appears to fall within the ambit of Ex parte Young.

We disagree with those district courts that have found it "wholly irrelevant that payments [under the Master Settlement Agreement] will be made in fixed future installments rather than a lump sum." Floyd v. Thompson, 111 F. Supp. 2d 1097, 1100 (W.D. Wis. 1999), aff'd on other grounds, 227 F.3d 1029 (7th Cir. 2000); accord Martin v. New Mexico, 197 F.R.D. 694, 696 (D.N.M. 2000); Barton v. Summers, 111 F. Supp. 2d 989, 991-92 (M.D. Tenn. 2000); cf. Strawser v. Lawton, 126 F. Supp. 2d 994, 1003 n.6 (S.D. W. Va. 2001) ("Plaintiffs' proposed result . . . would permit, by analogy, any seeker of state funds to look for accounts receivable of the State and then attempt to garnish them before their purely ministerial transmission to the treasury.").[5] From a purely economic perspective, it may be irrelevant that the settlement funds are to be paid over time rather than all at once; the future amount can be reduced to a present value. For the purposes of the Eleventh Amendment, however, the difference is highly relevant. In Elephant Butte, we held that the Eleventh Amendment did not bar a suit seeking

_____

[5]We do not agree with the Strawser court's concern on this issue. Our decision would allow a plaintiff to claim the state's accounts receivable only if under federal law those accounts themselves belonged to the plaintiff. That does not imply that a plaintiff could garnish unrelated funds. We express no opinion on this broader question.

an injunction reforming a contract to prevent the state from taking the profits of a lease: "[B]ecause the lease agreement allegedly conflicted with federal law at its inception, the state officials' acts of signing the lease and subsequently accepting benefits under the assignment provision may constitute an ongoing violation of federal law." 160 F.3d at 609-10. Similarly, in Johns v. Stewart, 57 F.3d 1544, 1553-55 (10th Cir. 1995), we held that the plaintiffs could not seek retroactive monetary reimbursement for federal Supplemental Security Income benefits that had been withheld by the state, but could seek prospective injunctive relief against future withholdings.

As in Elephant Butte and Johns, in this case the state officials' acceptance of the settlement funds solely for the state may constitute an ongoing violation of federal law. With respect to funds that have not been received, the officials have not yet violated federal law. The alleged harm to Harris is entirely in the future. The relief he seeks is therefore prospective in character and addressed to an ongoing violation of federal law.[6]

Defendants seek to analogize this case to Papasan v. Allain, 478 U.S. 265 (1986), but the foregoing discussion shows why that case is readily distinguishable. In Papasan, the Supreme Court held that the Eleventh

---

[6]Indeed, it is not clear that the state has yet received full reimbursement for its Medicaid payments, in which case Harris's claim would relate only to some future receipt of funds by the state.

Amendment barred a suit seeking declaratory and injunctive relief for breach of trust against state officials whose alleged mismanagement of school trust lands in the 1850s had led to significantly lower funding for certain school districts. Id. at 274-75. At the same time, however, the Court held that the Eleventh Amendment did not bar an equal protection claim challenging the disparity in school funding, because this claim sought relief from an alleged ongoing constitutional violation. Id. at 282. The claims barred in Papasan concerned alleged violations of federal law that were wholly in the past; for these, the courts could not provide relief even if styled as "prospective." In this case, as explained above, the alleged violation of federal law is ongoing. Harris's requested relief would "serve[] directly to bring an end to a present violation of federal law"; any effect it would have on Colorado's state treasury would be purely "ancillary" to the state's compliance with federal law. Id. at 278.

In sum, Harris seeks prospective relief for an alleged ongoing violation of federal law. While this suit, if successful, might deprive the state of future funds, that effect would be ancillary to compliance with federal law, not compensatory for past injuries.

- 19 -

### 3. Special Sovereignty Interests

The courts may not award relief against the state that "implicates special sovereignty interests" and is the "functional equivalent" of relief that would otherwise be barred by the Eleventh Amendment. ANR Pipeline, 150 F.3d at 1190. For example, the Eleventh Amendment bars a suit against a state that would divest it of sovereign control over some submerged lands because historically, "these lands are tied in a unique way to sovereignty." Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 286-87 (1997). It also bars a suit seeking an injunction against a state property-tax system because "it is impossible to imagine that a state government could continue to exist without the power to tax." ANR Pipeline, 150 F.3d at 1193. On the other hand, the Eleventh Amendment does not "extend to every situation where a state property interest is at issue"; Coeur d'Alene represents an "extreme and unusual case." Elephant Butte, 160 F.3d at 612; cf. Coeur d'Alene, 521 U.S. at 287 (referring to the "particular and special circumstances" of the case).

Defendants and Amici argue that the relief Harris seeks implicates four special sovereignty interests: the state's interest in (1) "mak[ing] determinations about the nature and extent of its various educational and social services programs"; (2) "its revenue regardless of its source"; (3) "its appropriation prerogatives"; and (4) "its authority to fashion an appropriate remedy in law

enforcement actions." None of these qualifies as a special sovereignty interest in this case.

The first two asserted interests can be dismissed straightforwardly on the basis of our precedent. First, the state has no special sovereign interest in ordinary aspects of its social programs, because "most government policies do not affect core aspects of a state's sovereignty." Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 495 n.6 (10th Cir. 1998); cf. Branson Sch. Dist. RE-82 v. Romer, 161 F.3d 619, 632 (10th Cir. 1998) (holding that the state has no special sovereign interest in managing lands held in trust). More to the point, a "state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex parte Young." J.B. v. Valdez, 186 F.3d 1280, 1287 (10th Cir. 1999). Second, the state has no special sovereign interest in future sources of revenue. See Elephant Butte, 160 F.3d at 612.

The third and fourth asserted interests may be more plausible in the abstract, but neither is sufficiently implicated by Harris's lawsuit to merit extensive discussion. Whatever the state's interest in its appropriations prerogatives, the relief Harris requests will not "impermissibly intrude upon the state's dignity and status as a sovereign government." Elephant Butte, 160 F.3d at 613 (quotation marks omitted). Contrary to Defendants' apparent belief, Harris

is not asking the legislature to pass an appropriations bill giving him money from the state treasury. Rather, he seeks to prevent Defendants from turning the tobacco settlement funds over to the treasury before he and the other smokers receive their portion. The state's interest with respect to these future funds is not related to appropriations but to revenue sources, an interest we have rejected as sufficiently special to serve as an exception to Ex parte Young. See Elephant Butte, 160 F.3d at 612.

Similarly, even assuming the state has a special sovereignty interest in shaping law-enforcement remedies, Harris's suit does not impermissibly intrude on this interest. Harris would not require the state to demand more or less money in its settlement with the tobacco companies, for example. The state and the tobacco companies have already determined how much money will be paid to the state; Harris merely seeks his portion (if any) of these funds. In that regard, Harris's claim is more analogous to the revenue interest we have already rejected.

In sum, "we cannot say the relief [Plaintiffs] request is as far-reaching or intrusive as that sought in Coeur d'Alene Tribe and ANR Pipeline." Elephant Butte, 160 F.3d at 612. As in Elephant Butte, "the remedy in this case only presents the possibility of a readjustment of priorities for the distribution of profits from," in this case, certain settlement funds. Id. at 612-13. It will have "minimal effect on the sovereignty and autonomy" of Colorado, particularly since

the "interest[s] of vindicating the federal rights and answering the federal questions involved substantially outweigh the state's sovereign interests." Id. at 613.

4. Conclusion

Harris seeks prospective relief for Defendants' alleged ongoing violation of federal law. This relief does not implicate the state's special sovereignty interests. We thus conclude that his suit is not barred by the Eleventh Amendment. Because we have subject-matter jurisdiction over this case, we turn now to its merits.

D. Section 1396b(d)(3)(B)(ii)

The premise of Harris's lawsuit is that at least some of the settlement funds are subject to the requirement of 42 U.S.C. § 1396k(b), which states that after the state and federal governments are reimbursed for their Medicaid costs, any remainder goes to the recipients.[7] However, Congress rejected Harris's premise

---

[7]We assume, without deciding, that a portion of the claims settled in the Master Settlement Agreement were for Medicaid claims, because the settlement agreement explicitly included health-related claims and Colorado's complaint sought damages that included amounts for "increased Medicaid payments." But see Watson, — F.3d at — (*5) (holding that Texas did not settle individual Medicaid claims).

in a rider to the Emergency Supplemental Appropriations Act, Pub. L. No. 106-31, 113 Stat. 57, 103-04 (1999), which added this provision to the Medicaid act:

> Except as provided in subsection (i)(19) [which prevents federal funding for the states' administrative costs of tobacco litigation], a State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement, or a judgment, described in clause (i) [which specifically names the 1998 Master Settlement Agreement] for any expenditures determined appropriate by the State.

42 U.S.C. § 1396b(d)(3)(B)(ii). Less central to this case, clause (i) specifically exempted the settlement funds from the requirement that the federal government be reimbursed for its pro rata share of Medicaid costs. These provisions apply to "amounts paid to a State prior to, on, or after the date of the enactment of this Act." Emergency Supplemental Appropriations Act, tit. III, § 3031(c), 113 Stat. at 104.

Clause (ii) appears to have been added by the Senate Appropriations Committee during its markup of the legislation. After considerable floor debate, the Senate defeated a competing amendment offered by Senators Specter, Harkin, Jeffords, and Kennedy that would have required the states to spend part of the settlement on tobacco and health programs rather than remitting it to the federal government. See generally 145 Cong. Rec. at S2828-36 (daily ed. Mar. 17, 1999); id. at S2881-97 (daily ed. Mar. 18, 1999). Much of this debate centered on whether the tobacco settlement funds were a Medicaid settlement, to which the

federal government would be entitled to a share.  Compare 145 Cong. Rec. at S2885 (daily ed. Mar. 18, 1999) (statement of Sen. Gorton) (stating that the Specter Amendment "makes an assumption, an unwarranted assumption, that these were Medicaid claims that were presented by the States"), and id. at S2887 (statement of Sen. Graham) (arguing that the Medicaid statute "is inapplicable to the tobacco litigation"), with id. at S2829 (daily ed. Mar. 17, 1999) (statement of Sen. Specter) (recognizing that the federal government has a "very strong claim" to a portion of the settlement under Medicaid law), id. at S2885 (daily ed. Mar. 18, 1999) (statement of Sen. Harkin) (stating that the settlement "also includes the Federal share of Medicaid"), id. at S2891 (statement of Sen. Murray) (same), and id. at S2896 (statement of Sen. Kennedy) (same).  Proponents of the Specter Amendment argued, in essence, that some portion of the settlement funds belonged to the federal government; therefore, it was appropriate for Congress to direct how this portion should be spent in exchange for waiving federal recoupment.  The final vote was 71 to 29 against the Specter amendment.  Id. at S2897.

Senators on both sides of the issue recognized the uncertainty about the legal status of the settlement funds and the desirability of congressional resolution in some manner.  See, e.g., 145 Cong. Rec. at S2829 (daily ed. Mar. 17, 1999) (statement of Sen. Specter) ("If this legislation is not enacted, it is possible that

there could be very bitter, protracted, and expensive litigation, with the Federal Government asserting its claim under existing law . . . . [State officials] and I agreed that we ought to try to resolve the matter so they would know what is going to happen and their planning would be firm."); id. at S2832 (statement of Sen. Sessions) ("At this point, the Federal Government may or may not have a claim upon that money."). In the Conference Report, the committee recognized that uncertainty over the distribution of the funds would create "litigation over the next several years, delaying the availability of these funds and putting planned State uses on hold" and therefore adopted the provision "in order to permit States which are delaying their plans for the use of these funds the certainty they need to plan their initiatives." H.R. Conf. Rep. No. 106-143, at 99 (1999).

Clause (ii) releases the tobacco settlement funds recovered by the state from any claims Harris had to receive any of this money under federal law. A contrary reading would negate the mandate that all money "recovered" by or "paid" to the state could be used "for any expenditures" it desired. Accord Strawser, 126 F. Supp. 2d at 1000. Harris nevertheless presents five reasons that we should read clause (ii) more narrowly, as exempting the state from reimbursing only the federal government: (1) Clause (ii) does not define what funds have been "recovered" by the state; (2) clause (i)'s express exemption of the settlement from federal reimbursement implies that the settlement payments

are not similarly exempt from individual reimbursement; (3) a narrow reading is necessary to avoid a disfavored repeal-by-implication; (4) application in this case raises retroactivity concerns; and (5) the legislative history supports a narrower reading. While these arguments have some force, none persuade us to abandon a plain reading of the text.

### 1. Amounts Recovered or Paid to the State

Harris argues that it "begs the question" to assume that the entire amount of the tobacco settlement constitutes "amounts recovered or paid to the State" within the meaning of § 1396b(d)(3)(B)(ii); rather, he asserts, the states are entitled only to their "lawfully acquired portion." All of the settlement funds go to the state, however; in plain English, the state has "recovered" or "been paid" funds, even if those funds are in turn owed to a third party. Thus, when § 1396b(d)(3)(B)(ii) refers to money "recovered or paid to the State," it is referring to any money that goes to the state under the tobacco settlement agreement.

### 2. Expressio Unius

Harris invokes the canon of construction that expressio unius est exclusio alterius – the expression of one thing is the exclusion of another. Because the statute expressly exempts the settlement funds from the requirement that the

federal government be reimbursed under the Medicaid laws, he argues, we should not read it impliedly to exempt the funds also from the requirement that individuals be reimbursed. The strength of this canon, however, varies by context. See, e.g., In re Sealed Case, 181 F.3d 128, 132 (D.C. Cir. 1999) (en banc) ("The legal maxim expressio unius est exlusio alterius . . . is not always correct. Rather, . . . the maxim's force in particular situations depends entirely on context, whether the draftsmen's mention of one thing . . . does really necessarily, or at least reasonably, imply the preclusion of alternatives." (quotation marks and alterations omitted)); In re Continental Cas. Co., 29 F.3d 292, 294 (7th Cir. 1994) ("We are skeptical of this maxim, for the omission of other items from a list may reflect no more than a belief that other options are provided for elsewhere."). We do not find it compelling to apply the canon as Harris wishes in this case. Harris would have us read clause (ii) as simply reiterating clause (i). We think it is more faithful to Congress's intent to read clause (i) as addressing a specific issue with which Congress was concerned, while clause (ii) was a more general exclusion to preclude other claims similar to those asserted by Harris from tying up these settlement funds.

### 3. Repeal by Implication

Harris argues that reading § 1396b(d)(3)(B)(ii) to exempt the settlement funds from § 1396k(b) would violate the canon of construction that "repeals by implication are not favored." United States v. United Continental Tuna Corp., 425 U.S. 164, 168 (1976). However, this rule of construction, like others, has to be applied with common sense and appreciation for context. Here, it appears that the new statute is simply a preemptive congressional resolution of a discrete controversy that arose long after the original § 1396k(b) was enacted. The later statute simply addresses one particular application and carves out an exception. We see no repeal-by-implication problem. See also Strawser, 126 F. Supp. 2d at 1000 n.4.

### 4. Retroactivity

Harris asserts that applying § 1396b(d)(3)(B)(ii) in this case raises "serious retroactivity problems." It is unclear what he means by this. Deciding whether a statute should operate retroactively is primarily a question of discerning congressional intent. Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1148 (10th Cir. 1999) cert. denied, Palaganas-Suarez v. Greene, 529 U.S. 1041 (2000). Here, as noted above, the statute clearly applies to all funds received under the Master

Settlement Agreement, whether past, present, or future. Thus, it is clear that Congress intended for the section to apply retroactively.

Harris might be arguing that applying this section retroactively raises due process questions. With respect to economic legislation, the Due Process Clause requires that retroactivity must further a legitimate legislative purpose through rational means. General Motors Corp. v. Romein, 503 U.S. 181, 191 (1992). Here, the provision eliminated uncertainty over ownership of the funds, thereby freeing the states to use such funds immediately as received. This is sufficient to meet the rational-basis test. Accord Strawser, 126 F. Supp. 2d, at 1002 n.5. There is no retroactivity problem.

5. Legislative History

Harris argues that the legislative history supports reading § 1396b(d)(3)(B)(ii) as dealing only with reimbursements to the federal government. "Where the language of the statute is plain, it is improper for this Court to consult legislative history in determining congressional intent." N.M. Cattle Growers Ass'n v. United States Fish & Wildlife Serv., 248 F.3d 1277, 1282 (10th Cir. 2001). As noted above, we find the language of clause (ii) to be plain. It states that a "State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement . . . for any expenditures determined

<u>appropriate by the State</u>." § 1396b(d)(3)(B)(ii) (emphasis added). We find nothing ambiguous in that language.

In any event, if we were to consult legislative history, we find nothing that would lead us to Harris's interpretation of this statute. Indeed, we have found nothing that indicates Congress considered individual claims at all. Thus, the reference to legislative history is unhelpful.

## CONCLUSION

Harris's lawsuit is not barred by the Eleventh Amendment, because it seeks prospective relief for Defendants' ongoing alleged violation of federal law and the requested relief does not implicate any special sovereignty interests. On the merits, however, we AFFIRM the district court's dismissal for failure to state a claim upon which relief can be granted, because, pursuant to § 1396b(d)(3)(B)(ii), funds received under the Master Settlement Agreement are not subject to the distribution requirements of § 1396k(b).