

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2003

# Broselow v. Fisher

Precedential or Non-Precedential: Precedential

Docket 01-3933

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Broselow v. Fisher" (2003). *2003 Decisions.* Paper 782.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/782

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed February 11, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3933

PETER BROSELOW, ON HIS OWN BEHALF AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED; MARY
A. BROUGHTON, ON HER OWN BEHALF AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED; ALFONSO BROUGHTON, ON HIS OWN
BEHALF AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,
        Appellants

v.

D. MICHAEL FISHER, ATTORNEY GENERAL; FEATHER
O. HOUSTON, SECRETARY OF THE PENNYSLVANIA
DEPARTMENT OF PUBLIC WELFARE; PEG DIERKERS,
DEPUTY SECRETARY FOR PUBLIC WELFARE
FOR MEDICAL ASSISTANCE PROGRAMS; CITIBANK N.A.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-00493)
District Judge: Honorable Louis H. Pollak

Argued on August 1, 2002

Before: ROTH, AMBRO and RENDELL,*
Circuit Judges

_____

 *The Honorable Marjorie O. Rendell participated in the oral argument
and conference and joined in the decision in this case on August 1,
2002, but became recused from this matter prior to filing of the opinion.
This opinion and judgment are being entered insofar as the remaining
judges are unanimous in this decision.




(Filed: February 11, 2003)

        Antonio Ponvert, III,
         Esquire (Argued)
        Koskoff, Koskoff & Bieder, PC
        350 Fairfield Avenue, 5th Floor
        Bridgport, CT 06604

        Edward B. McDaid, Esquire
        McDaid, Flum & Bloom
        2001 Market Street
        Two Commerce Sq., 32nd Floor
        Philadelphia, PA 19103

          COUNSEL FOR APPELLANTS

        Mike Fisher
        Attorney General

        Joel M. Ressler (Argued)
        Chief Deputy Attorney General
        Chief, Tobacco Enforcement Section
        Office of Attorney General
        15th Floor, Strawberry Square
        Harrisburg, PA 17120

          COUNSEL FOR APPELLEES

OPINION OF THE COURT

ROTH, Circuit Judge:

In 1998, a number of States, including the Commonwealth of Pennsylvania, settled their lawsuits against the major tobacco companies. Under the Tobacco Settlement, the Tobacco Companies agreed to pay the Commonwealth of Pennsylvania more than $11 billion. Plaintiffs, a class of Pennsylvania Medicaid recipients who have various smoking-related illnesses, believe that a provision of the Medicaid Act, 42 U.S.C. S 1396k, entitles them to part of the Tobacco Settlement. They contend that the Commonwealth recovered the Tobacco Settlement funds under an assignment from them. Accordingly, they assert

2

that pursuant to the provisions of S 1396k(b) they are individuals to whom the remainder of the amount collected should be paid.

The District Court dismissed plaintiffs' action against the Commonwealth, finding that the Eleventh Amendment barred the suit. We will affirm that dismissal, but not on Eleventh Amendment grounds.

I. Procedural History

On January 27, 2000, plaintiffs filed a complaint in the United States District Court for the Eastern District of Pennsylvania, pursuant to 42 U.S.C. S 1983. They named as defendants three officers of the Commonwealth of Pennsylvania and Citibank N.A. They sought declaratory and injunctive relief to compel the officers of the Commonwealth to comply with 42 U.S.C. S 1396k(b), which they contend requires the Commonwealth to pay them whatever portion of the Tobacco Settlement is not used to reimburse the Commonwealth for its Medicaid expenses.

On April 27, 2001, the District Court granted the Commonwealth's motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), on the grounds that the Eleventh Amendment barred the suit. The court also denied plaintiffs' motion for reconsideration.

II. Jurisdiction and Standard of Review

Because these claims were brought pursuant to 42
U.S.C. S 1983 and the Medicaid Act, the District Court had
subject matter jurisdiction under 28 U.S.C. S 1331. We
have appellate jurisdiction under 28 U.S.C. S 1291.

We exercise plenary review over decisions to grant a
motion to dismiss. See Malia v. General Electric , 23 F.3d
828, 830 (3d Cir. 1994). Thus, we will reverse only if,
accepting all well pleaded allegations in the complaint as
true, the plaintiff is not entitled to relief.

III. Discussion

As the District Court concluded, before plaintiffs can
prevail in this suit they must demonstrate that the relief

3

they seek is not barred by the Eleventh Amendment of the
United States Constitution, which generally bars suits
brought by individuals against state officers acting in their
official capacity. See MCI Telecommunications Corp. v. Bell
Atlantic Pennsylvania, 271 F.3d 491, 503 (3rd Cir. 2001).
Before we address the difficult Eleventh Amendment issues,
however, we can consider whether there are alternative
grounds, logically antecedent to the Eleventh Amendment
inquiry, upon which we can base a decision in favor of the
State. See Amchem Prods. v. Windsor, 521 U.S. 591, 612
(1997). The Supreme Court has specifically held, for
example, that it is appropriate to decide whether a statute
permits a cause of action against a State before deciding
whether the Eleventh Amendment bars the suit. See
Vermont Agency of Natural Res. v. United States, 529 U.S.
765, 779-80. We will, therefore, bypass the issue of the
Eleventh Amendment bar because we conclude that, for two
antecedent reasons, plaintiffs' action fails to state a claim
for which relief can be granted. See Strawser v. Condon,
290 F.3d 720, 729 (4th Cir. 2002) (holding, in appeal of
Medicaid recipients' actions against the States of West
Virginia, North Carolina, and South Carolina, that actions
could be dismissed on basis of 1999 amendment to
Medicaid statute without resolving Eleventh Amendment
bar).

As to the first of these antecedent grounds, we have
determined that S 1396k(b) does not authorize the relief
plaintiffs seek because the funds from the Tobacco
Settlement were not collected under an assignment from
plaintiffs. Second, even if the funds were collected on
assignment, a 1999 amendment to the Medicaid Act bars
plaintiffs' claims to any portion of the Tobacco settlement.
See 42 U.S.C. S 1396b(d)(3)(B)(ii). That amendment allows
the States to use the funds from the Tobacco Settlement for
any purpose the States find appropriate. Thus, even if
S 1396k(b) had given the plaintiffs a right to some of the
Tobacco Settlements funds, the amendment absolved the

Commonwealth of the obligation to pass on any of the funds to Medicaid beneficiaries. We note that our sister circuit courts of appeals that have considered these claims by Medicaid beneficiaries for Tobacco Settlement funds have come to the same conclusion. See Cardenas v. Anzai,

4

311 F.3d 929, 937-40 (9th Cir. 2002) (holding S 1396b(d)(3)(B)(ii) expressly allowed State to use all Tobacco Settlement funds for any purpose); Strawser, 290 F.3d at 730-31 (same); Greenless v. Almond, 277 F.3d 601, 608 (1st Cir. 2002) (same); Tyler v. Douglas, 280 F.3d 116, 123 (2d Cir. 2001) (same); Harris v. Owens, 264 F.3d 1282, 1295 (10th Cir. 2001) (same); Watson v. Texas , 261 F.3d 436, 444-45 (5th Cir. 2001) (holding complaint did not plead an assignment from Medicaid beneficiaries under S 1396k(b); cf. Barton v. Summers, 293 F.3d 944 (6th Cir. 2002) (holding Medicaid beneficiaries' claims barred by Eleventh Amendment but, even if not barred, plaintiffs had no implied private right of action under S 1983 and S 1396b(d)(3)(B)(ii) permits use of Tobacco Settlement funds as States determine appropriate).

We turn first to the question whether the funds were collected on assignment from plaintiffs.

A. Does S 1396k(b) Entitle Plaintiffs to a Portion of the Tobacco Settlement Funds?

Subsection (a) of S 1396k requires Medicaid recipients to assign to the State their right to recover medical expenses from a third party. Subsection (b) provides that whenever a State recovers Medicaid costs from a third party under such an assignment, it must distribute that recovery, first, to itself to pay for its share of Medicaid expenses and, next, to the federal government to pay for the federal share of Medicaid expenses. The State must pay any remainder to the Medicaid recipient whose illness prompted the Medicaid expenditure.1 Section 1396k(b) applies, however, only when

_____

1. Section 1396k provides in pertinent part:

    (a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall--

    (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required--

    (A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter

5

the recovery is made "under an assignment" from the Medicaid recipient.

Our review of the complaint in the Commonwealth of Pennsylvania's action against the Tobacco Companies indicates that the Tobacco Settlement funds were not collected "under an assignment" from Medicaid recipients. Instead, the Commonwealth recovered those funds by suing the Tobacco Companies directly, under a parens patria theory. That theory allows a state to bring suit on its own behalf to protect the well being of its residents. See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez , 458 U.S. 592 (1982).

There is substantial evidence in the Commonwealth's complaint that the Commonwealth proceeded against the Tobacco Companies under a parens patria theory. The Commonwealth expressly invoked this theory as the basis for its complaint. It also attempted to defuse any statute of limitations issues by invoking the doctrine of nullum tempus occurrit regi, a doctrine that exempts a State from the statute of limitations when the State brings suit itself to protect the public's rights. See Dep't of Trans. v. J.W. Bishop & Co., 439 A.2d 101, 104 (Pa. 1981). This exemption from the statute of limitations would not exist for claims assigned to the State by Medicaid beneficiaries, and, indeed, the claims of many of these beneficiaries would have been barred by the statute of limitations.

---

and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.

* * *

(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.

6

In the form of pleading the Commonwealth chose for the Complaint, as to each cause of action, the Commonwealth made clear that one item of damage it was seeking was the Medicaid expenditures it had paid out. The Commonwealth does not claim a right to recover all the medical expenditures by and for Medicaid beneficiaries. For each cause of action, the Complaint cites, as a direct and foreseeable result of defendants' wrongful conduct, that the "Commonwealth has paid and will continue to be required to pay medical costs of Medicaid . . . incurred because of tobacco-related disease."

Plaintiffs point out, nevertheless, that the Commonwealth, in Paragraph 9 of the Damages and Injunctive Relief Requested, prays for "restitution, including, but not limited to, health care costs of Medicaid and state medical assistance recipients for diagnosis and treatment of tobacco-related disease." This language is broader and could be read to refer not only to the Commonwealth's share of expenditures but also to the federal government's and that of the Medicaid recipients. In view, however, of the specific description of damage in each cause of action, we conclude that the language of the prayer for relief reflects that specifically described damage, i.e., the Commonwealth's share of Medicaid costs.

Thus, the language of the complaint demonstrates that the Commonwealth did not proceed "under an assignment" from Medicaid recipients. See Watson, 261 F.3d at 444-445 (holding that complaint, seeking to recover funds "expended by the State" to provide medical treatment, does not plead an assignment to enforce the rights of smokers). Accordingly, we conclude that, in view of the nature of the remedy sought by the Commonwealth, plaintiffs do not have a claim under S 1396k(b) for any recovery assigned to the Commonwealth by them. Id.

Plaintiffs contend, however, that this result empowers States to ignore their obligations to Medicaid recipients and to the federal government. They urge that, by prosecuting all recovery actions under a parens patria theory, a State could avoid paying Medicaid recipients and the federal government their shares of any Medicaid recovery. Plaintiffs overestimate this threat. The doctrine of parens patria can

7

only be used in certain, well-defined cases. A State may seek recovery under parens patria only when it can show that it has a "quasi-sovereign interest." Alfred L. Snapp & Son, Inc, 458 U.S. at 607-08. To do so, the State must articulate "an interest apart from the interests of particular private parties" that affects a "sufficiently substantial" segment of its residents. Id. at 607.

Here, the Commonwealth cited in its Complaint how the defendants had misled its residents about the dangers of smoking and how defendants had manipulated nicotine content and delivery to cause addiction. The Complaint particularly focussed on the targeting by the Tobacco Companies of children, adolescents, and African-Americans. Few, if any, S 1396k(b) Medicaid suits for recovery from third parties could assert such a broad interest in the well-being of the people of a State, as opposed to the narrower interests of individual Medicaid beneficiaries who have suffered a particular illness or injury.

B. Does the 1999 Amendment to the Medicaid Act Bar Plaintiff's Claims?

Even if Pennsylvania had recovered the Tobacco Settlement funds "under an assignment" from Medicaid recipients, we would still find that plaintiffs have failed to state a claim for which relief could be granted. In a rider to a 1999 appropriations bill, Congress amended the Medicaid Act by promulgating what is now S 1396b(d)(3)(B)(i) and (ii) and renumbering S 1396b(d)(3) as S 1396b(d)(3)(A). In this amendment, Congress absolved the states from any potential liability to the federal government or to Medicaid recipients for any part of the Tobacco Settlement funds by explicitly giving to the States the authority to use the Tobacco Settlement funds for any purpose the States deemed appropriate. Plaintiffs' arguments to the contrary cannot overcome the plain meaning of the language of that amendment. Thus, even if S 1396k(b) applied to the Tobacco Settlement funds, the 1999 amendment would absolve the Commonwealth of its obligation to share its recovery with the plaintiffs.

The amended Act now reads:

8

> (A)   The pro rata share to which the United  States is equitably entitled, as determined by the Secretary, of the net amount recovered during any quarter by the State or any political subdivision thereof with respect to medical assistance furnished under the State plan shall be considered an overpayment to be adjusted under this subsection.

> (B)(i) Subparagraph (A) and paragraph (2)(B) shall not apply to any amount recovered or paid to a State as part of the comprehensive settlement of November 1998 between manufacturers of tobacco products, as defined in section 5702(d) of Title 26 [26 U.S.C.A. S 5702(d)], and State Attorneys General, or as part of any individual State settlement or judgment reached in litigation initiated or pursued by a State against one or more such manufacturers.

> (ii)   Except as provided in subsection (i)(19), a State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement, or a judgment, described in clause (i) for any expenditures determined appropriate by the State.2

These provisions outline the federal government's response to the Tobacco Settlement. Subsection (A) provides that, in most cases, when a State recovers funds spent on Medicaid expenses, the federal government is entitled to its share. Subsections (B)(i) and (ii) directly address the Tobacco Settlement funds. Subsection (B)(i) waives the federal entitlement to a share of the Tobacco Settlement. Subsection (B)(ii) expressly grants the states

the authority to use the Tobacco Settlement funds"for any expenditures determined appropriate by the State." The meaning of the above language is plain. It allows the States to refuse to compensate Medicaid recipients as otherwise

_____

2. The exception in clause (ii) refers to a prohibition against making payments "with respect to any amount expended on administrative costs to initiate or pursue litigation described in subsection (d)(3)(B)." 42 U.S.C. S 1369b(i)(19).

would be required by 42 U.S.C. S 1396k(b). As we set out above, many of our sister circuits agree. See Cardenas, 311 F.3d at 939-40; Strawser, 290 F.3d at 730-31; Greenless, 277 F.3d at 608; Tyler, 280 F.3d at 123; Harris, 264 F.3d at 1295.

Plaintiffs advance several arguments in an attempt to overcome this plain language. First, they contend that, while subsection (B)(ii) permits the States to use the federal share of the Tobacco Settlement for any appropriate expenditure, that permission does not extend to the share of Medicaid beneficiaries. To support this contention, plaintiffs argue that subsection (B)(ii) refers only to the sums described in subsection (B)(i) -- sums which they contend include only the federal share. Unfortunately for the plaintiffs, "the amount recovered" as stated in subsection (B)(ii) is not merely a reference to the federal share which is the subject of subsection (B)(i). There is no language in subsection (B)(ii) containing such a limitation. There is reference in subsection (B)(ii) to subsection (B)(i) but the pertinent language is in the phrase "a comprehensive or individual settlement, or a judgment, described in clause (i);" this constitutes a specific reference to the Tobacco Settlement and its progeny as set out in subsection (B)(i). See Strawser, 790 F.3d at 731. As such, it does not limit the use of "the amounts recovered."

Plaintiffs also argue that the plain meaning of subsection (B)(ii) is contradicted by the legislative history of the enactment. They claim that once Congress decided to let the States keep the federal share, the debate surrounding the enactment of subsection (B)(ii) then focussed on whether to attach conditions on the use of the federal share. Subsection (B)(ii), they claim, merely makes explicit that Congress decided not to do so. Although this point was raised in the debate, plaintiffs' argument skips over other equally significant parts of the debate.

In fact, the legislative history indicates that Congress was not entirely convinced that Medicaid even covered the Tobacco Settlement and that S 1396b(d)(3)(B)(ii) was passed to remove doubt and to avoid costly litigation -- litigation like the case before us. See Harris, 264 F.3d at 1294-95 (setting forth significant portions of the floor debate). Thus,

despite plaintiffs' contentions, the legislative history also supports the plain meaning of S 1396b(d)(3)(B)(ii) -- that it allows states to use the Tobacco Settlement funds for any purpose they deem appropriate.

In addition, plaintiffs argue that applying the plain meaning of S 1396b(d)(3)(B)(ii) contradicts several canons of interpretation: (1) statutes should be read to avoid surplusage, TRW Inc. v. Andrews, 534 U.S. 19, 24 (2001); (2) implied repeals are disfavored, United States v. United Continental Tuna Corp., 425 U.S. 164, 168 (1976); and (3) retroactive application is disfavored, I.N.S. v. St. Cyr, 533 U.S. 289 (2001). None of these canons is applicable here.

Deciding whether a statute is retroactive is primarily a question of legislative intent, see DeSousa v. Reno, 190 F.3d 175, 186 (3d Cir. 1999). Here, subsection (B)(i) specifically states that it applies to "any amount" received under the Tobacco Settlement. We conclude that this reference to "any amount" includes funds received prior to the passage of the amendment. For that reason, the amendment is clearly retroactive.

As to implied repeal, plaintiffs argue that the plain meaning of S (B)(ii) should be ignored because it would implicitly repeal S 1396k(b). Subsection (B)(ii), however, does not repeal S 1396k(b). It applies only to the Tobacco Settlement funds and applies to those funds explicitly. For that reason, S 1396k(b), as it applies to the usual action to recover Medicaid costs from a third party, continues in effect.

We also reject plaintiffs' argument that the plain meaning of subsection (B)(ii) makes the rest of the 1999 amendment superfluous. Plaintiffs argue that if subsection (B)(ii) means what it says, then that subsection in and of itself gives up the federal share of recovery. Subsection (B)(i) is therefore meaningless. Plaintiffs assert that statutes should be read to avoid surplusage. See TRW Inc. v. Andrews, 534 U.S. at 24. This argument fails, however, because the plain meaning of subsection B(ii) does not make subsection B(i) meaningless. If Congress had enacted subsection (B)(ii) without subsection (B)(i), the language of the amendment would have been ambiguous. The question of whether the

11

federal government had given up its share of the recovery would not have been expressly dealt with. That ambiguity might eventually have been resolved in favor of releasing the federal share. We should not, however, mistake for surplusage Congress's attempts to clarify its intent.

We conclude, therefore, that S 1396b(d)(3)(B)(ii) explicitly allows the States to use the Tobacco Settlement funds for any appropriate expenditure and, as a result, that Medicaid beneficiaries have no claim to those funds.

IV. Conclusion

For the reasons stated above, we will affirm the judgment
of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

12